**BIERMAN & ASSOCIATES**
**Attorneys for Plaintiff**
**17 Battery Place, Suite 204**
**New York, New York 10004**
**(212) 363-6960**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RASHEENA WESLEY, SYREETA WESLEY,
ANKLAV DWYER, JERMAINE CHADWICK,
AMRA ROBINSON, ANGEL RAMIREZ,
JEANNE WILLIAMS, ELLANCY JACQUES
AND RONALD TATE, Individually and
On Behalf of Other Similarly
Situated Former Employees Employed by the
Defendants,

                             Plaintiffs,

        - against -

THE CATALYST CAPITAL GROUP, INC., NATURAL
MARKETS FOOD GROUP, NATURAL MARKET
RESTAURANT CORP., MRS. GREEN'S
MANAGEMENT CORP., MRS. GREEN'S NATURAL
MARKET, INC., PLANET ORGANIC HOLDING
CORP., MRS. GREEN'S OF 585 HUDSON,
INC., MRS. GREEN'S OF TARRYTOWN, INC, and MRS.
GREEN'S OF RYE, INC.,

                             Defendants.
-------------------------------------------------------------------X

Docket No.

**COMPLAINT**

**PLAINTIFFS DEMAND
TRIAL BY JURY**

## I. INTRODUCTION

Plaintiffs, RASHEENA WESLEY, SYREETA WESLEY, ANKLAV DWYER

("Dwyer"), JERMAINE CHADWICK ("Chadwick"), AMRA ROBINSON ("Robinson"),

ANGEL RAMIREZ ("Ramirez"), JEANNE WILLIAMS ("Williams"), ELLANCY JACQUES

("Jacques") and RONALD TATE ("Tate") (collectively, "Plaintiffs") bring this action by their

attorneys, Bierman & Associates, against the defendants THE CATALYST CAPITAL GROUP,

1

INC. ("Catalyst"), NATURAL MARKETS FOOD GROUP ("NM Food"), NATURAL

MARKET RESTAURANT CORP. ("NM Restaurant"), PLANET ORGANIC HOLDING

CORP. ("Planet Organic"), MRS. GREEN'S MANAGEMENT CORP. ("MG Management"),

MRS. GREEN'S NATURAL MARKET, INC. ("MG Market"), MRS. GREEN'S OF 585

HUDSON, INC. ("MG Hudson"), MRS. GREEN'S OF TARRYTOWN, INC. ("MG

Tarrytown") and MRS. GREEN'S OF RYE, INC. ("MG Rye"), (the foregoing defendants or any

of them being referred to as, "Defendants") on behalf of themselves and all similarly situated

former employees for monetary relief to redress violations of the Worker Adjustment and

Retraining Notification Act , 29 U.S.C. § 2101 *et seq.* ("Federal WARN Act"), and

regulations promulgated thereunder, and the New York State Worker Adjustment and

Retraining Notification Act, Article 25-A of the New York Labor Law ("N.Y. Lab. Law") §

860, *et seq.* ("NYS WARN Act"), and regulations promulgated thereunder.

      1.     Plaintiffs bring this action on behalf of themselves and other similarly situated

former employees who were employed by Defendants and who were terminated involuntarily

and without cause as part of or as the foreseeable result of plant closings and/or mass layoffs

ordered by Defendants and who were not provided sixty (60) days' advance written notice of the

termination of their employment by Defendants, as required by the Federal WARN Act, or

ninety (90) days' advance written notice of the termination of their employment by Defendants,

as required under the NYS WARN Act.

      2.     Plaintiffs bring this action to obtain back pay and payment for lost benefits and

expenses relating thereto resulting from Defendants' failure to provide notice of at least sixty

days, as required by the Federal WARN Act and Defendants' failure to provide notice of at least

ninety days, as required under the NYS WARN Act.

## II. JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked under 29 U.S.C.A. § 2104(a)(5), 28 U.S.C. § 1331 and 29 U.S.C. § 2101, *et seq.*

4.      This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is properly placed in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c) as the judicial district where the corporate defendants are doing business and are subject to the personal jurisdiction of the Court and the place where a substantial part of the events or omissions giving rise to the claims occurred.

6.      Venue is further properly placed in the Southern District of New York pursuant to 29 U.S.C.A. § 2104(a)(5) because violations of the federal WARN Act occurred in this District and/or Defendants transact business in this District.

## III. PARTIES

1.      At all times relevant to this action, and unless stated otherwise herein, Plaintiff Rasheena Wesley, who resides in the county, city and state of New York, was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of her employment, of which she was notified by Defendants on or about November 15, 2016.

2.      Rashena Wesley was told by Defendants at or about the time of the termination of her employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of her employment.

3.      During the period of her employment with Defendants, Rasheena Wesley worked as a full-time Beverage Bar Lead at the at the Mrs. Green's Natural Market store located at

585 Hudson Street, New York, NY 10014 ("Hudson Facility") and was an employee of Defendants in good standing until the termination of her employment by Defendants.

4.      Plaintiff Rasheena Wesley's employment with Defendants was terminated by Defendants without cause.

5.      On or about November 15, 2016, Rasheena Wesley, in addition to being promised two weeks "dismissal pay" ("Dismissal Pay") by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to her two weeks' pay and that she would agree to waive claims against Defendants relating to her employment at the Hudson Facility. Wesley declined to sign the severance/release form. Rasheena Wesley never received the Dismissal Pay from Defendants.

6.      At all times relevant to this action, and unless stated otherwise herein, Plaintiff Syreeta Wesley, who resides in the county, city and state of New York, was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of her employment which she was notified of by Defendants on or about November 15, 2016.

7.      Syreeta Wesley was told by Defendants at the time she was notified of the termination of her employment, to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of her employment.

8.      During the period of her employment with Defendants, Syreeta Wesley worked as a full-time Deli Associate at the Hudson Facility and was an employee of Defendants in good standing until the termination of her employment by Defendants.

9.      Plaintiff Syreeta Wesley's employment with Defendants was terminated by Defendants without cause.

10.     On or about November 15, 2016, Syreeta Wesley, in addition to being promised two weeks Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to her two weeks' pay and that she would agree to waive claims against Defendants relating to her employment at the Hudson Facility. Syreeta Wesley declined to sign the severance/release form. Syreeta Wesley never received the Dismissal Pay from Defendants.

11.     At all times relevant to this action and unless stated otherwise herein, Plaintiff Dwyer, who resides in the county, city and state of New York, was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of his employment which he was notified of by Defendants on or about November 15, 2016.

12.     Dwyer was told by Defendants at the time he was notified of the termination of his employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of his employment.

13.     During the period of his employment with Defendants, Dwyer worked as a full-time Receiving and Maintenance Associate at the Hudson Facility and was an employee of Defendants in good standing until the termination of his employment by Defendants

14.     Plaintiff Dwyer's employment was terminated by Defendants without cause.

15.     On or about November 15, 2016, Dwyer, in addition to being promised two weeks Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to him two weeks' pay and that he would agree to waive claims against Defendants relating to his employment at the Hudson Facility. Dwyer declined to sign the severance/release form. Dwyer never received the Dismissal Pay from Defendants.

16.     At all times relevant to this action, and unless stated otherwise herein, Plaintiff Chadwick, who resides in the city and state of New York, was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of his employment of which he was notified by Defendants on or about November 15, 2016.

17.     Chadwick was told by Defendants at the time he was notified of the termination of his employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of his employment

18.     During the period of his employment by Defendants, Chadwick worked as a full-time Receiving and Maintenance Associate at the Hudson Facility and was an employee of Defendants in good standing until the termination of his employment by Defendants.

19.     Plaintiff Chadwick's employment was terminated by Defendants without cause.

20.     On or about November 15, 2016, Chadwick, in addition to being promised two weeks Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to him two weeks' pay and that he would agree to waive claims against Defendants relating to his employment at the Hudson Facility. Chadwick declined to sign the agreement. Chadwick never received the Dismissal Pay from the Defendants.

21.     At all times relevant to this action, and unless stated otherwise herein, Plaintiff Robinson, who resides in the city and state of New York,  was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of his employment which he was notified of by Defendants on or about November 15, 2016.

22.     Robinson was told by Defendants at or about the time of the termination of his employment to be available to perform certain additional work, such as packing merchandise, in

the Hudson Facility after the termination of his employment.

23.     During the period of his employment by Defendants, Robinson worked as a full-time Grocery Associate at the Hudson Facility and was an employee of Defendants in good standing until Defendants notified him of the termination of his employment.

24.     Plaintiff Robinson's employment was terminated by Defendants without cause.

25.     On or about November 15, 2016, Robinson, in addition to being promised two weeks' Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to him two weeks' pay and that he would agree to waive claims against Defendants relating to his employment at the Hudson Facility. Robinson declined to sign the severance/release form. Robinson never received the Dismissal Pay from the Defendants.

26.     At all times relevant to this action, and unless stated otherwise herein, Plaintiff Williams, who resides in the county, city and state of New York,  was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of her employment which she was notified of by Defendants on or about November 15, 2016.

27.     Williams was told by Defendants at or about the time of the termination of her employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of her employment.

28.     During the period of her employment by Defendants, Williams worked as a full-time Associate at the Hudson Facility and was an employee of Defendants in good standing until the termination of her employment by Defendants.

29.     Plaintiff Williams's employment was terminated by Defendants without cause.

30.     On or about November 15, 2016, Williams, in addition to being promised two weeks' Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to her two weeks' pay and that she would agree to waive claims against Defendants relating to her employment at the Hudson Facility. Williams declined to sign the severance/release form. Williams never received the Dismissal Pay from the Defendants.

31.     At all times relevant to this action, and unless stated otherwise herein, Plaintiff Ramirez, who resides in the county of Bronx, city and state of New York, was an employee of Defendants during the period beginning in or about July or August 2015 and ending with the termination of her employment which she was notified of by Defendants on or about November 15, 2016.

32.     Ramirez was told by Defendants at or about the time of the termination of her employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of her employment.

33.     During the period of her employment by Defendants, Ramirez worked as a full-time Associate at the Hudson Facility and was an employee of Defendants in good standing until the termination of her employment by Defendants.

34.     Plaintiff Ramirez's employment was terminated by Defendants without cause.

35.     On or about November 15, 2016, Ramirez, in addition to being promised two weeks' Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to her two weeks' pay and that she would agree to waive claims against Defendants relating to her employment at the Hudson Facility. Ramirez declined to sign the agreement. Ramirez never received the Dismissal Pay from

Defendants.

36.     At all times relevant to this action, and unless stated otherwise herein, Plaintiff Jacques, who resides in the city and state of New York,  was an employee of Defendants during the period beginning in or about July or August and ending with the termination of his employment which he was notified of by Defendants on or about November 15, 2016.

37.     Jacques was told by Defendants at or about the time of the termination of his employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of his employment

38.     During the period of his employment by Defendants Jacques worked as a full-time Assistant Grocery Manager at the Hudson Facility and was an employee of Defendants in good standing until the termination of his employment by Defendants.

39.     Plaintiff Jacques's employment was terminated by Defendants without cause.

40.     On or about November 15, 2016, Jacques, in addition to being promised two weeks' Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to him two weeks' pay if he signed a severance/release form relating to his employment at the Hudson Facility. Jacques, unaware of his rights under the Federal WARN Act and NYS WARN Act and faced with the economic hardship of suddenly losing his job right at the onset of the holiday season, signed the severance/release form. Jacques received only the Dismissal Pay from Defendants.

41.     At all times relevant to this action, and unless stated otherwise herein, Plaintiff Tate, who resides in the county, city and state of New York,  was an employee of Defendants during the period beginning in or about January 2016 and ending with the termination of his employment, of which he was notified by Defendants on or about November 15, 2016.

9

42.     Tate was told by Defendants at or about the time of the termination of his employment to be available to perform certain additional work, such as packing merchandise, in the Hudson Facility after the termination of his employment.

43.     During the period of his employment by Defendants, Tate worked as a full-time Department Manager the Hudson Facility and was an employee of Defendants in good standing until the termination of his employment by Defendants.

44.     Plaintiff Tate's employment was terminated by Defendants without cause.

45.     On or about November 15, 2016, Tate, in addition to being promised two weeks' Dismissal Pay by Defendants, was presented by Defendants with a severance/release form stating, *inter alia*, that Defendants would pay to him four weeks' pay if he signed a severance/release form. Tate, unaware of his rights under the Federal WARN Act and NYS WARN Act and faced with the economic hardship of suddenly losing his job right at the onset of the holiday season, signed the severance/release form. Tate received the two weeks' Dismissal Pay and only two additional week's pay.

46.     In Plaintiffs' representative capacity, Plaintiffs and all of the similarly situated Class Members:

   a.  Were, at all times relevant to this action, employed by Defendants immediately prior to the termination of their employment pursuant to a mass layoff or plant closing;

   b.  Were employees in good standing with Defendants at all times prior to the dates of the termination of their employment;

   c.  Their employment was terminated by Defendants pursuant to a mass layoff and/or plant closing; and

d.  Were not given timely, advance or proper notice of such termination of their

employment in violation of both the Federal WARN Act and the NYS WARN

Act.

47.     Plaintiffs and each person they seek to represent herein were discharged without

cause on their part on or about the date of closure of the Facility at which they were employed or

within 30 days of that date as the reasonably foreseeable consequence of the mass layoff and/or

plant closure ordered by Defendants and are "affected employees" within the meaning of 29

U.S.C. § 2101(a)(5) and NY Lab. Law § 860-a.

48.     On information and belief, Defendant Catalyst is a foreign corporation doing

business in New York State, with its headquarters at 181 Bay Street, Suite 4700, Toronto, ON

M5J 2T3, Canada. Catalyst is engaged in the business of private equity investment, and

ownership, control and operation of businesses, throughout the United States and in the state of

New York, including the ownership, control and/or operation of the other named defendants.

49.     On information and belief, Defendant NM Food is, and at all times relevant hereto

was, a domestic corporation and registered to do business in the state of New York. Its office for

service of process is 1 Bridge Street, 2nd Floor, Suite 3, Irvington, New York 10533.

50.     On information and belief, Defendant NM Restaurant is, and at all times relevant

hereto was, a corporation doing business in the state of New York and maintaining offices at 1

Bridge Street, 2nd Floor, Suite 3, Irvington, New York 1053.

51.     Defendant MG Market is and at all times relevant hereto was, on information and

belief, a domestic corporation and registered to do business in the state of New York. Its

designated office for service of process is 1 Bridge Street, 2nd Floor, Suite 3, Irvington, New

York 10533.

52.     Defendant MG Management is and at all times relevant hereto was, on information and belief, a domestic corporation and registered to do business in the state of New York. Its designated office for service of process is 1 Bridge Street, 2nd Floor, Suite 3, Irvington, New York 10533.

53.     Defendant Planet Organic is and at all times relevant hereto was, on information and belief, a domestic corporation and registered to do business in the state of New York. Its designated office for service of process is c/o CT Corporation System, 111 8th Avenue, New York, New York 10011.

54.     On information and belief, at all relevant times, defendants NM Food, NM Restaurant, MG Management, MG Market and Planet Organic maintained and operated their headquarters located at 1 Bridge Street, 2nd Floor, Suite 3, Irvington, New York 10533 and owned and operated various "Mrs. Green's Natural Market" grocery stores throughout the country.

55.     Defendant MG Hudson is and at all times relevant hereto was, on information and belief, a domestic corporation and registered to do business in the state of New York. Its designated office for service of process is 1 Bridge Street, 2nd Floor, Suite 3, Irvington, New York 10533.

56.     On information and belief, at all times relevant hereto, Defendants Catalyst, NM Food, NM Restaurant, MG Management, MG Market, Planet Organic and/or MG Hudson owned and operated a "Mrs. Green's Natural Market" grocery store the Hudson Facility.

57.     On or about November 15, 2016, Defendants closed the Hudson Facility without prior notice to its employees.

58.     Defendant MG Tarrytown is and at all times relevant hereto was, on information

and belief, a domestic corporation and registered to do business in the state of New York. Its designated office for service of process is 1 Bridge Street, 2nd Floor, Suite 3, Irvington, New York 10533.

59.     On information and belief, at all times relevant hereto, Defendants Catalyst, NM Food, NM Restaurant, MG Management, MG Market, Planet Organic and/or MG Tarrytown owned and operated a "Mrs. Green's Natural Market" grocery store at 45 North Broadway, Tarrytown, NY 10591 ("Tarrytown Facility").

60.     On or about November 18, 2016, Defendants closed the Tarrytown Facility without prior notice to its employees.

61.     Defendant MG Rye is and at all times relevant hereto was, on information and belief, a domestic corporation and registered to do business in the state of New York. Its designated office for service of process is c/o CT Corporation System, 111 8th Avenue, New York, New York 10011.

62.     On information and belief, at all times relevant hereto, Defendants Catalyst, NM Food, NM Restaurant, MG Management, MG Market, Planet Organic and/or MG Rye owned and operated a "Mrs. Green's Natural Market" grocery store at 1037 Boston Post Road, Rye, NY 10580 ("Rye Facility").

63.     On or about November 18, 2016, Defendants closed the Rye Facility without prior notice to its employees.

64.     Until the respective dates of closure of the Hudson Facility, Rye Facility and Tarrytown Facility (collectively, the "Facilities"), Plaintiffs and all similarly situated employees were employed by Defendants and worked at and/or reported to one or more of the Facilities.

65.     Upon information and belief, at all relevant times until the Facilities' closings, Defendants employed one hundred (100) or more employees excluding part-time employees, or 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of over-time) and are "employers" within the meaning of 29 U.S.C. § 2101(a).

66.     Upon information and belief, at all relevant times until the Facilities' closings, Defendants employed fifty (50) or more employees, excluding part-time employees, or fifty or more employees that work in the aggregate at least two thousand hours per week and are "employers" within the meaning of N.Y. Lab. Law § 860-a(3).

## IV. FACTS

67.     Plaintiffs bring this action on their own behalf and, pursuant to the Federal WARN Act, NYS WARN Act and Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of all other similarly situated former employees of Defendants whose employment was terminated in or about 2016 who worked at one of the Facilities until their termination.

68.     Throughout the past several years, Defendants have owned and operated various locations of "Mrs. Green's Natural Market," a grocery store specializing in health foods, throughout the United States, including a number of stores in New York.

69.     On information and belief, Defendants, despite being nominally different entities, essentially functioned as one entity in the operation of the Facilities.

70.     On information and belief, MG Hudson, MG Rye and MG Tarrytown lacked ownership and decisionmakers independent from Catalyst, NM Food, NM Restaurant, MG Management, MG Market and Planet Organic and had a unity of personnel policies emanating from a common source.

71.     On information and belief, Defendants Catalyst, NM Food, NM Restaurant, MG

Management, MG Market, Planet Organic exercised *de facto* control over MG Hudson, MG Rye and MG Tarrytown and/or the operations of the Hudson Facility, the Rye Facility and the Tarrytown Facility, were responsible for making the decisions that gave rise to the illegal employment actions described herein and negotiated financing for MG Hudson, MG Rye and MG Tarrytown and the Facilities.

72.    In the fall of 2016, the Facilities abruptly and without prior warning or notice to the employees of the Facilities closed, leaving hundreds of former employees at the Facilities suddenly jobless.

73.    Notwithstanding the certain personal and financial hardship that sudden unemployment with little or no prior notice would cause many of these employees, Defendants, nonetheless, failed to provide the sixty days' notice to their employees, including Plaintiffs and the Class Members, required under the Federal WARN Act, or to provide the ninety days' notice to their employees, including Plaintiffs and the Class members, required under the NYS WARN Act.

74.    On information and belief, on or about the date of closing of each of the respective Facilities, Defendants promised to pay Plaintiffs and the other employees of the Facilities Dismissal Pay for which no agreement was required to be signed.

75.    On information and belief, on or about the date of closing of each of the respective Facilities, Defendants also presented each Plaintiff and each of the Class Members with a severance/release form stating, *inter alia*, that Defendants would pay that person two weeks' pay (four weeks' pay for certain supervisors) and that he or she would waive claims against Defendants relating to his or her employment.

76.    Defendants failed to pay any consideration, or any adequate or genuine

consideration, for the execution of the severance/release forms, which forms Defendants used to try to circumvent the requirements of the Federal and/or NYS WARN Acts.

77.   On information and belief, neither the employees who signed a severance/release form nor those who did not sign the severance/release form received the payment as described in the severance/release forms.

78.   Defendants, as a single employer, terminated Plaintiffs' and the other Class Members' employment as part of a mass layoff and/or a plant closing as defined by 29 U.S.C. § 2101(a)(2), (3) and NY Lab. Law § 860-a, for which they were entitled to receive sixty (60) days' advance written notice under the Federal WARN Act and ninety (90) days' advance written notice under the NYS WARN Act.

79.   As a result of the mass layoffs and/or plant closings, at least fifty of Defendants' employees at each Facility and thirty-three percent of Defendants' employees at each Facility, excluding "part-time employees," as is set forth in the federal WARN Act, were terminated. As a result of the mass layoffs and/or plant closings, at least twenty-five of Defendants' employees at each Facility and thirty-three percent of Defendants' employees at each Facility, excluding "part-time employees," as is set forth in the NYS WARN Act, were terminated.

80.   Defendants never gave Plaintiffs or other Class Members the statutorily required sixty days' notice of the mass layoff or termination in violation of the Federal WARN Act or the statutorily required ninety days' notice of the mass layoff or termination in violation of the NYS WARN Act.

81.   Defendants failed to pay Plaintiffs and other Class Members their respective wages, salary, commissions, bonuses, accrued sick pay and accrued vacation for sixty days following their respective terminations and failed to make the 401(k) contributions and provide

them with health insurance coverage and other employee benefits under ERISA for sixty days

from and after the dates of their respective terminations.

## CLASS ACTION ALLEGATIONS

82.     Plaintiffs bring this class action pursuant to Rules 23(a) and (b)(3) of the Federal

Rules of Civil Procedure on behalf of the following class of employees:

> All persons who were employed in any position who worked at or reported to the
> MG Hudson Facility, the MG Rye Facility, the MG Tarrytown Facility or any
> other "Mrs. Green's Natural Market" location in the State of New York and
> whose employment was terminated without cause as the reasonably foreseeable
> consequence of the mass layoffs and/or plant closings ordered by Defendants in or
> about 2016 and who are "affected employees" within the meaning of 29 U.S.C. §
> 2101(a)(5) and/or NY Lab. Law § 860-a.1.(the "Class Members").

And the sub-class of Class Members who signed a severance agreement (the "Sub-Class

Members"), defined as follows:

> All persons who were employed in any position who worked at or reported to the
> MG Hudson Facility, the MG Rye Facility, the MG Tarrytown Facility or any
> other "Mrs. Green's Natural Market" facility in the State of New York and whose
> employment was terminated without cause as the reasonably foreseeable
> consequence of the mass layoffs and/or plant closings ordered by Defendants in or
> about 2016 who are "affected employees" within the meaning of 29 U.S.C. §
> 2101(a)(5) and/or NY Lab. Law § 860-a.1 and who signed a severance agreement
> with one of the Defendants at the time of or after the termination of their
> employment by Defendants.

83.     Pursuant to 29 U.S.C. § 2104(a)(5), Plaintiffs maintain these claims on behalf of

themselves and each of the other Class Members.

84.     The Class meets the requirements of Fed. R. Civ. P. 23(a) for class certification.

85.     The Class meets the requirements of Fed. R. Civ. P. 23(b)(3) because the

questions of law or fact common to the members of the Class predominate over any questions

affecting only individual members, and a class action is superior to other available methods for

the fair and efficient adjudication of the controversy.

86.     Class Members are so numerous as to render joinder of all members impracticable, as there are, on information and belief, more than three hundred persons who are included in the Class and likely more than one hundred persons who are included in the Sub-Class.

87.     Each of the other proposed Class Members are similarly situated to Plaintiffs in respect to his or her rights under the Federal WARN Act and the NYS WARN Act in at least the following ways:

    a.   Plaintiffs and the other proposed Class Members were discharged by Defendants without cause on their part;

    b.   Plaintiff and the other proposed Class Members are "affected employee(s)" within the meaning of the Federal WARN Act (29 U.S.C.A. § 2101(a)(5)) and the NY Lab. Law § 860-a;

    c.   Defendants were required by the Federal WARN Act to give Plaintiffs and other proposed Class Members at least 60 days' advance written notice of their respective layoffs and/or terminations;

    d.   Defendants were required by the NYS Warn Act to give Plaintiffs and other proposed Class Members at least 90 days' advance written notice of their respective layoffs and/or terminations;

    e.   Prior to their termination, neither Plaintiffs nor the other proposed Class Members received written notice that complied with the requirements of the Federal WARN Act or the NYS WARN Act;

    f.   Defendants failed to pay Plaintiffs and the other proposed Class Members their respective wages, salary, benefits, and accrued severance pay for the 60 days'

period following notice of their terminations and after notice of their respective

layoff and/or termination.

88.     A class action is superior to all other available methods for this controversy

because the individual Class Members and Sub-Class Members may lack the financial resources

to vigorously prosecute a lawsuit in federal court against corporate defendants, damages suffered

by individual Class Members are small compared to the expense and burden of individual

prosecution of this litigation, and concentrating all the potential litigation concerning the WARN

Act rights of the members of the Class in this Court will obviate the need for unduly duplicative

litigation that might result in inconsistent judgments, will conserve the judicial resources and the

resources of the parties and is the most efficient means of resolving the rights of Class Members

and Sub-Class Members under the Federal WARN Act and NYS WARN Act.

89.     Plaintiffs' claims are typical of the claims of all other Class Members in that, for

each of the several acts described above, Plaintiffs are or were an injured party. Plaintiffs have

no interests antagonistic to those of the Class or Sub-Class, and Defendants have no defenses

unique to Plaintiffs.

90.     The claims of plaintiffs Jacques and Tate are typical of the claims of all other

Sub-Class Members in that, for each of the several acts described above, Jacques and Tate are or

were injured parties. Jacques and Tate have no interests antagonistic to those of the Class or Sub-

Class, and Defendants have no defenses unique to Jacques and/or Tate.

91.     Plaintiffs Jacques and Tate will fairly and adequately protect and represent the

interests of the Class and Sub-Class.

92.     Plaintiffs have the time and resources to prosecute this action and have retained

counsel who have experience in matters involving employee rights and class/collective action

19

litigation.

93.     On information and belief, no Class Member or Sub-Class Member has an interest in individually controlling the prosecution of a separate action under the Federal WARN Act and/or NYS WARN Act.

94.     On information and belief, no court litigation concerning the Federal WARN Act or NYS WARN Act rights of any Class Member or Sub-Class Member has been commenced.

95.     Concentrating all the potential litigation concerning the Federal WARN Act and NYS WARN Act rights of the Class Members and Sub-Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the parties and is the most efficient means of resolving the Federal WARN Act and NYS WARN Act rights of all the Class Members and Sub-Class Members.

96.     On information and belief, the identity of each of the Class Members and Sub-Class Members is contained in the books and records of Defendants.

97.     On information and belief, a recent residence address of each of the Class Members and Sub-Class Members is contained in the books and records of Defendants.

98.     On information and belief, the rate of pay and benefits that was being paid by Defendants to each Class Members and Sub-Class Member at the time of the termination of his or her employment is contained in the books and records of Defendants.

99.     As a result of Defendants' violations of the Federal WARN Act and NYS WARN Act, Plaintiffs and other Class Members and Sub-Class Members have been damaged  in amounts equal to the sum of: (a) their respective  lost wages, salaries, commissions, bonuses, accrued sick pay, accrued vacation pay, 401(k) contributions for sixty calendar days; (b) the health and medical insurance and other fringe benefits that they would have received or had the

benefit of receiving, for a period of sixty calendar days after the dates of their respective

terminations; (c) medical expenses incurred during such period by such persons that would have

been covered and paid under the applicable employee benefit plans had that coverage continued

for that period; (d) the cost of replacement insurance coverage and other related expenses that

such persons were forced to incur as the result of the early terminations of such benefits; and (3)

such other and further relief and damages as may be available under the applicable laws .

### V.  CAUSES OF ACTION
### AS AND FOR A FIRST CAUSE OF ACTION
### (29 U.S.C. § 2101, *et. seq.* - The Federal WARN Act)

100.     Plaintiffs repeat and reallege the allegations set forth above with the same force

and effect as if fully set forth herein.

101.     At all relevant times, Defendants employed 100 or more employees excluding

part-time employees, or 100 or more employees who in the aggregate worked at least 4,000

hours per week (exclusive of hours of overtime.)

102.     At all relevant times, on information and belief, Defendants were "employers", as

that term is defined in 29 U.S.C. § 210l(a)(l) and/or (2) and 20 C.F.R. § 639(a), and continued to

operate as a business until they determined to order a mass layoff and/or plant closing at the

Facilities or thereafter.

103.     Defendants constituted a "single employer" of Plaintiffs and Class Members

under the Federal WARN Act in that, *inter alia*:

   a.   Defendants shared common ownership;

   b.   Defendants shared common officers and directors;

   c.   Defendants exercised *de facto* control over the labor practices governing the

        Plaintiffs and Class members including the decision to order the mass layoff

and/or plant closing at the Facilities;

    d.   There was a unity of personnel policies emanating from Defendants; and

    e.   There was a dependency of operations among Defendants.

104.    In or about November 2016, Defendants ordered a "mass layoff," as that term is defined by 29 U.S.C. § 2101(a)(3), and/or "plant closing", as that term is defined by 29 U.S.C. § 2101(a)(2), at each of the Facilities.

105.    The mass layoff and/or plant closing at each of the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2), for at least fifty of Defendants' employees and 33% of Defendants' workforce at each of the respective Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. §2101(a)(8).

106.    Plaintiffs and each of the other Class Members were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the mass layoffs and/or plant closings ordered by Defendants at the Facilities.

107.    Plaintiffs and each of the other Class Members are "affected employees" of Defendants within the meaning of 29 U.S.C. §2101 (a)(5).

108.    Defendants were required by the Federal WARN Act to give Plaintiffs and each of the other Class Members at least 60 days' advance written notice of their termination.

109.    Defendants failed to give Plaintiffs and each of the other Class Members written notice that complied with the requirements of the Federal WARN Act.

110.    Each Plaintiff and each of the other Class Members is an "aggrieved employee" of Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

111.    Defendants failed to pay Plaintiffs and each of the other Class Members their respective wages, salary, commissions, bonuses, accrued sick pay and accrued vacation for 60

days following their respective terminations and failed to make the pension and 401(k)

contributions and provide employee benefits under ERISA for 60 days from and after the dates

of their respective terminations.

### AS AND FOR A SECOND CAUSE OF ACTION
#### (NY Lab. Law § 860, *et. seq.* - NYS WARN Act)

112.    Plaintiffs repeat and reallege the allegations set forth above with the same force

and effect as if fully set forth herein.

113.    At all relevant times, Defendants employed 50 or more employees excluding part-

time employees, or fifty or more employees that work the aggregate at least 2,000 hours per

week.

114.    At all relevant times, on information and belief, Defendants were "employers", as

that term is defined in NY Lab Law § 860-a(3), and continued to operate as a business until they

determined to order a mass layoff and/or plant closing at the Facilities or thereafter.

115.    Defendants constituted a "single employer" of Plaintiffs and Class Members

under the NYS WARN Act in that, *inter alia*:

    a.   Defendants shared common ownership;

    b.   Defendants shared common officers and directors;

    c.   Defendants exercised *de facto* control over the labor practices governing the

        Plaintiffs and Class members including the decision to order the mass layoff

        and/or plant closing at the Facilities;

    d.   There was a unity of personnel policies emanating from Defendants; and

    e.   There was a dependency of operations among Defendants.

116.    In or about October or November 2016, Defendants ordered a "mass layoff," as that term is defined by NY Lab. Law § 860-a and/or "plant closing", as that term is defined by NY Lab. Law § 860-a (4) and (6), at each of the Facilities.

117.    The mass layoff and/or plant closing at each of the Facilities resulted in "employment losses," as that term is defined by NY Lab. Law § 860-a (2) for at least twenty-five of Defendants' employees and 33% of Defendants' workforce at each of the respective Facilities, excluding "part-time employees," as that term is defined by NY Lab. Law § 860-a (5).

118.    Plaintiffs and each of the other Class Members were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the mass layoffs and/or plant closings ordered by Defendants at the Facilities.

119.    Plaintiffs and each of the other Class Members are "affected employees" of Defendants within the meaning of NY Lab. Law § 860-a(1).

120.    Defendants failed to provide at least ninety days' written notice of termination to Plaintiffs and the other members of the Class and Sub-Class prior to ending each such individual's employment with Defendants.

121.    Each of the Class Members and Sub-Class Members suffered an "employment loss" within the meaning of NY Lab. Law § 860-g(l).

122.    Defendants are liable for violating NY Lab. Law § 860-b(l) by failing to provide at least ninety days' advance written notice of the impending employment loss to the affected employees.

123.    Defendants failed to pay Plaintiffs and each of the other Class Members their respective wages, salary, commissions, bonuses, accrued sick pay and accrued vacation for 60 days following their respective terminations and failed to make the pension and 401(k)

contributions and provide employee benefits under ERISA for 60 days from and after the dates of their respective terminations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on their own behalf and on behalf of the other Class Members demand judgment against Defendants as follows:

a.     In favor of each of the Plaintiffs, Class Members and Sub-Class Members equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued sick pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for sixty days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, as well as all costs incurred by Plaintiffs, Class Members and Sub-Class Members for medical treatment that would have been covered by Plaintiffs' and the Class Members' and Sub-Class Members' health insurance obtained through Defendants and all costs for replacement health insurance, and other damages available at law, as determined in accordance with the Federal WARN Act, 29 U.S.C. § 2104(a)(l)(A);

b.     In favor of each of the Plaintiffs, Class Members and Sub-Class Members equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued sick pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for ninety days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, as well as all costs incurred by Plaintiffs, Class Members and Sub-Class Members for medical treatment that would have been covered by Plaintiffs', Class Members' and Sub-Class Members' health insurance obtained through Defendants and all costs for replacement health insurance, and other damages available at law and as determined in accordance with the NYS WARN Act, NY Lab. Law 860-g;

    c.      Certification that the Plaintiffs and the other Class members constitute a single class and that plaintiffs Jacques and Tate and other Sub-Class Members constitute a single sub-class;

    d.      Appointment of the undersigned attorneys as Class and Sub-Class Counsel;

    e.      Appointment of Plaintiffs as the Class Representatives, plaintiffs Jacques and Tate as the Sub-Class representatives and payment of reasonable compensation to them for their services as such, reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incur in prosecuting this action, as authorized by the Federal WARN Act and the NYS WARN Act; and

    f.      An award of prejudgment interest together with such other and further relief as this Court may deem just and proper and as may be authorized by law.

## DEMAND FOR A TRIAL BY JURY

Plaintiffs hereby demands a trial by jury of all claims stated herein.

Dated: New York, New York
      January 18, 2017

                  BIERMAN & ASSOCIATES
                  Attorneys for Plaintiffs

By:    _____

                  Mark H. Bierman, Esq.
                  17 Battery Place, Suite 204
                  New York, New York 10004
                  Tel: (212) 363-6960
                  mbierman@biermanandassociates.com