Mark H. Bierman
Bierman & Associates
17 Battery Place, Suite 204
New York, NY 10004
Tel:212-363-6960
Email: mbierman@biermanandassociates.com

-----------------------------------------------------------------X
RASHEENA WESLEY, SYREETA WESLEY,
ANKLAV DWYER, JERMAINE CHADWICK,
AMRA ROBINSON, ANGEL RAMIREZ,
JEANNE WILLIAMS, ELLANCY JACQUES
AND RONALD TATE, Individually and
On Behalf of Other Similarly
Situated Former Employees Employed by the
Defendants,

                                        Plaintiffs,         Docket No.
                                                         17 CV 00376 (PAC)

      - against -

THE CATALYST CAPITAL GROUP, INC., NATURAL
MARKETS FOOD GROUP, NATURAL MARKET
RESTAURANT CORP., MRS. GREEN'S
MANAGEMENT CORP., MRS. GREEN'S NATURAL
MARKET, INC., PLANET ORGANIC HOLDING
CORP., MRS. GREEN'S OF 585 HUDSON,
INC., MRS. GREEN'S OF TARRYTOWN, INC, and MRS.
GREEN'S OF RYE, INC.,

                                        Defendants.
-----------------------------------------------------------------X

**DECLARATION OF MARK H. BIERMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER GRANTING (1) FINAL SETTLEMENT APPROVAL; (2) FINAL CERTIFICATION OF A SETTLEMENT CLASS; (3) FINAL APPROVAL OF THE DISTRIBUTION FORMULA, AND (4) FINAL APPROVAL OF CLASS INCENTIVE AWARDS**

       I, Mark H. Bierman, upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. Section 1746, declare that the following statements are true and correct:

1. I am admitted to practice law in the State of New York and a member in good standing in this Judicial District of the United States Federal Courts. I am the principal of the firm Bierman & Associates ("BA") in New York, New York and represent the Plaintiffs and provisional class in this case. I have personal knowledge of the facts set forth herein.

2. I am respectfully providing this Declaration in support of Plaintiffs' Motion for an Order granting (1) final settlement approval; (2) final certification of a settlement class and sub-class; (3) final approval of the Distribution Formula, and (4) final approval of class incentive awards.

## FACTS AND PROCEDURAL POSTURE OF THE CASE

3. Plaintiffs commenced this case on behalf of themselves and those similarly situated employees on or about January 18, 2017. *See,* Complaint, Dkt. 1.

4. In the Complaint, Plaintiffs alleged that they and other employees of defendants were terminated from their employment without advance notice as required under the federal and New York State WARN Acts when defendants permanently closed the stores in which they were employed.

5. Defendants allegedly owned and operated food stores known as Mrs. Green's Fresh Foods Market located in various locations in the United States, including locations in the state of New York. Defendants closed three of its stores within the state of New York which were located in Manhattan, Rye, and Tarrytown.

6. Specifically, Plaintiffs and the provisional class members are former employees of certain stores alleged to be owned by Defendants, known as "Mrs. Green's Natural Market" located at 585 Hudson Street, New York, NY 10014 ("Hudson Facility"), "Mrs. Green's Natural

Market" located at 45 North Broadway, Tarrytown, NY 10591 ("Tarrytown Facility") and "Mrs. Green's Natural Market" located at 1037 Boston Post Road, Rye, NY 10580 ("Rye Facility") (collectively the "Facilities").

7. The claims herein are asserted under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. ("Federal WARN Act"), and regulations promulgated thereunder, and the New York State Worker Adjustment and Retraining Notification Act, Article 25-A of the New York Labor Law ("N.Y. Lab. Law") § 860, *et seq.* ("NYS WARN Act") (the foregoing federal and state WARN Acts are hereinafter collectively referred to as the "WARN Acts"), and regulations promulgated thereunder. Plaintiffs and the putative class members are asserted to have been terminated involuntarily and without cause as part of or as the alleged foreseeable result of plant closings and/or mass layoffs ordered by Defendants which occurred in or about November, 2016, and to have not been provided sixty (60) days' advance written notice of the termination of their employment by Defendants, as set forth in the Federal WARN Act, or ninety (90) days' advance written notice of the termination of their employment by Defendants, as set forth under the NYS WARN Act. Plaintiffs, former employees employed at the Facilities whose employment was terminated at or about the time of the closing of the Facilities, filed this "WARN Act" case under the WARN Acts. Dkt. 1.

8. In their complaint, filed on January 18, 2017, Plaintiffs, on behalf of themselves and others similarly situated, sought damages under the WARN Acts. Plaintiffs also sought attorneys' fees, pre-judgment interest and reimbursement for the costs of bringing this action. Dkt. 1.

9. As is set forth in the Complaint, the only distinction between two classes of Plaintiffs

is that one class of plaintiffs signed a severance agreement and received an amount in severance pay and the other did not. The amount to be paid under the settlement is adjusted to reflect such severance payments.

10. The Non-Catalyst Defendants and Catalyst Defendants denied the allegations in Plaintiff's Complaint in an Answer served and filed with the court. Dkt. 35 and 37, respectively.

11. Soon after the commencement of the action, the parties began to engage in discussions about informal discovery with an eye towards possible discovery. The parties also exchanged initial disclosures and entered into a confidentiality agreement to facilitate the production of documents, which agreement was ordered by this Court.

12. I met with the Plaintiffs and conferred with them by phone on numerous occasions to review their documents and other evidence to assess the magnitude of the damages and those of the putative class. In particular, plaintiffs Rasheena, Wesley, Syretta Wesley, Jeanne Williams and Ronald Tate were heavily involved and devoted considerable amounts of their time to helping me understand the organization of the stores, the compensation of employees, the benefits received from the company, the history leading up to the closures, information communicated by the employer, scheduling of hours and overtime by the employer, and payments claimed to have been made by the employer and the claimed nature of those payments. I also confirmed with then the accuracy of various of payroll records supplied by Defendants, which payroll records were maintained by an established third-party payroll service known as Paylocity.

13. On behalf of Plaintiffs, I engaged in informal discovery and spoke to several former employees of Defendants who confirmed all of what Plaintiffs had told me and demonstrated for

me with their documents and records.

14. Defendants produced spreadsheets that it stated it had retained the services of a financial services firm to calculate, detailing the average compensation, hourly rate, the monetary value of non-wage benefit and other employment information for all of the approximately 185 employees[1] that were employed in the Facilities within six months of the closure of those Facilities. The spread sheets produced by Defendants also provided totals by category of amounts for the relevant sixty day period under the WARN Acts, amounts of severance claimed to have been paid by the employer after the terminations occurred, and other claimed amounts paid as so-called "notice pay" that defendants claimed to have been paid to the putative class members after the termination of their employment.

15. After the issuance of a Case Management Order by the Court on May 17, 2017, Plaintiff served extensive document demands and interrogatories on defendants. Defendants also served extensive interrogatories and document demands on plaintiffs.

16. Defendants in connection with the informal discovery and formal discovery demands produced voluminous payroll records and benefit documents for all putative class members, documents relating to the financial status of the Company, all of the severance agreements claimed to have been signed by employees in the putative class, benefit manuals and other documents related to the claim. Defendants also supplied Plaintiffs with copies of their filings with the New York State Department of Labor ("NYSDOL"). Plaintiffs also engaged in discussions with NYSDOL attorney.

---

[1] Defendants have represented that a number of those employees either resigned voluntarily or were transferred.

17. On or about July 3, 2017, Defendants provided responses to Plaintiffs Interrogatory and Discovery Demands and subsequently produced additional documents relevant to the claims.

18. Throughout this time, the parties continued to have regular and extensive settlement discussions. The Non-Catalyst Defendants' counsel authorized me to have direct communications with one of the principals of those defendants, Robert Wexler. Mr. Wexler and I had extensive discussions regarding settlement, the business operations of the employer, the business relationship between the various defendant entities and the financial condition of certain defendants as related to the faltering business defense and the claim of financial instability.

19. On July 20, 2017, a conference was held by the Court at the request of the Defendants. At that conference both defendants' attorneys and Mr. Wexler addressed the Court.

20. One of the attorneys for the non-Catalyst Defendant, Joseph Nuccio, along with Mr. Wexler represented to the Court that various of the non-Catalyst Defendants were in dire financial straits and that a bankruptcy filing by them was imminent if the action could not be settled and an agreement reached with other creditors. They urged the Court to appoint a Magistrate Judge for the purposes of an early settlement conference.

21. At the July 20, 2017 court conference, the attorney for the Catalyst Defendant, Barbara Meister Cummins, also addressed the Court. Ms. Cummins represented to the Court that Catalyst was merely an investor in certain of the non-Catalyst Defendants, that Catalyst was not an employer within the meaning of the WARN Acts, and Catalyst had held off making a motion to dismiss Catalyst from the case to see if the action could be settled. Ms. Cummins advised the Court that Catalyst too was interested in an early settlement.

22. I informed the Court at the July 20, 2017 conference that while the Plaintiffs were

interested in trying to settle the action on behalf of themselves and the putative class members, that Plaintiffs required additional documentation in order to be able to adequately analyze the scope of damages, to determine the accuracy of defendants spreadsheet that they had provided to the Plaintiffs, the defenses asserted and the financial condition of the non-catalyst defendants.

23. The Defendants agreed at the Court's urging to produce to Plaintiffs the necessary documents in advance of meeting with a Magistrate.

24. The Court appointed Magistrate Judge James L. Cott with a direction that an early mediation date be set.

25. Defendants produced to Plaintiffs thousands of pages of payroll records encompassing detailed compensation records for a period of three years before the terminations for all of the approximately 185 of the employees who were employed at the Facilities at or about the time of their closing, severance agreements and releases for all 155 employees claimed by Defendants to have signed severance agreements, certain benefit information, and financial documents for various of the non-Catalyst defendants.

26. Plaintiffs then devoted extensive amounts of time analyzing the payroll records, calculating average regular hours, over-time hours, paid time off hours, holiday time, determining lengths of service and determining the most beneficial averages for calculating damages for the Plaintiffs and the putative class members.

27. My office also undertook to conduct extensive legal research into the defendants claimed defenses, including, but not limited to the faltering business defense and the defense founded on the employees having signed severance agreements. My office also conducted research into the relationship between the various Defendants, including obtaining transcripts and

declarations from other court proceedings involving various of the Defendants, including one in which Catalyst and other Defendants were involved in the purchase of various stores from another business entity in bankruptcy for use as Mrs Green's stores.

28. A date for mediation was thereafter set by the Court for August 24, 2017.

29. After the July 20, 2017 conference, the parties and counsel continued to exchange additional information, discussed various settlement models and engaged in several settlement meetings and discussions.

30. A mediation was then scheduled before Magistrate Judge James L. Cott for August 24, 2017. Detailed mediation statements were provided by the parties to Judge Cott in advance of the mediation.

31. On August 24, 2017, the parties appeared and attended an all day mediation before Judge Cott. During the mediation, the defendants claimed by Defendants to be the employer, informed Judge Cott that of the matter did not settle, those defendants would be filing a petition for bankruptcy within the next two weeks.

32. Defendants have represented to Plaintiffs' counsel that the defendants operating the Mrs. Greens' stores have ceased business operations.

33. After a full day of mediation with Judge Cott, the parties had reached an impasse. Judge Cott, having become fully familiar with the claims in the action, the strengths and weakness of the claims and defenses, the potential scope of damages, and the financial condition of the Non-Catalyst Defendants claimed to be the employer, made a settlement recommendation to the parties that the case be settled for $400,000.00 which amount was more than twice the defendants last best offer. Under the settlement, the Defendants would provide additional

information and declarations regarding the financial status of defendants, as well as a declaration from Catalyst Defendant setting forth their lack of decision making authority and control and that they did not act as an employer for the Plaintiffs or putative class members.

34. Judge Cott then afforded the parties one week to consider the Judge Cott's settlement proposal, which he strongly urged the parties to accept.

35. Plaintiffs thereafter met wit me to discuss whether to accept or reject the settlement proposal. After an extensive discussion about the benefits and down side of Judge Cott's proposal, the Plaintiffs agreed that the proposal was fair and satisfactory and would provide adequate compensation to themselves and putative class members.

36. Finally, on August 31, 2017, the date imposed by Judge Cott for advising him as to whether the parties would accept his proposed settlement, the parties agreed in principle to settle the case for the fixed amount of four hundred thousand dollars ($400,000.00).

37. For approximately three months thereafter, the parties extensively negotiated the terms of the Stipulation and Settlement Agreement, Class Notice, Proof of Claim, Summary Notice, Preliminary Approval Order, Order of Final Approval and Order of Dismissal with Prejudice, and have discussed the content of the motion for provisional class certification. A true copy of the executed Stipulation and Settlement Agreement is annexed herein as Exhibit 1 and the other documents are annexed to the Stipulation and Settlement Agreement and identified as Exhibits A - G.

38. The Non-Catalyst Defendants who claimed to be the employer were required to provide certain financial documents relating to their claim of financial distress, and declarations support that claim and other representations, and declarations of Catalyst relating to its claim that

it was an investor only and not an employer within the meaning of the WARN Acts. Those declarations and documents are annexed to the Settlement Agreement.

39. Defendants also provided additional documentation and information relating to certain claimed "notice pay" and figures that Defendants supplied showing compensation amounts for certain employment benefits and a declaration with respect to those amounts that are also annexed to the Settlement Agreement.

## TERMS OF THE SETTLEMENT AGREEMENT

40. As indicated above, Exhibit 1 is a fully executed copy of the Stipulation and Settlement Agreement. A summary discussion of the terms is contained in Plaintiff's Memorandum of Law in Support of the Motion for Final Approval.

## PROCEDURAL BACKGROUND FOR APPROVAL OF THE SETTLEMENT

41. On November 30, 2017, Plaintiffs filed a motion for (1) Preliminary Settlement Approval; (2) Provisional Certification of the Settlement Class; (3) an Order Directing Distribution to the Class of Notice; (4) an Order appointing Bierman & Associates as class counsel, (5) an Order Setting a Hearing Date for Final Approval of Settlement. Dkt. 58.

42. By order dated December 12, 2017 (the " Preliminary Approval Order"), the Court, *inter alia*, granted Plaintiffs' motion for preliminarily approval the Settlement Agreement, provisionally certified the class, directed distribution of the Class Notice, appointed my office as class Counsel, and set a Fairness Hearing for April 23, 2018. The Court also set January 23, 2018 as the date by which Class Notice plan was to be completed. The Court also set March 9, 2018 as the last date by which any objection, opt-out or submission of the Information Confirmation Form was required to be delivered or post-marked by. The Court also approved the provision of

the settlement agreement for Class Counsel to administer the giving of notice. Dkt. 60

43. In accordance with Court's Preliminary Approval Order, on January 5, 2018, I mailed true copies of the Class Notice approved by the Court in the Preliminary Approval Order, to all of the provisional Settlement Class members by First Class Mail, postage prepaid, in an envelope containing my offices return address, to their last known addresses as was supplied to Class Counsel by Defendants based on their payroll records, by delivering same to the United States Postal Service. Attached hereto as Exhibit 2 is a copy of the Class Notice that was mailed to each of the Settlement Class members in accordance with the information supplied by Defendants. In addition, and pursuant to the Preliminary Approval Order, the Summary Notice for publication, as approved by the Court, was published to run once in each of the publications identified in the Settlement Agreement and as directed by the Court. Annexed hereto as Exhibit 3 is a true copy of the Summary Notice as approved by the Court in the Preliminary Approval Order. Annexed as Exhibits 4, 5, and 6 respectively, are the Affidavits of Publication of The New York Daily News, The New York Post, and the White Plains Examiner attesting to publication of the Summary Notice on January 8, 2018, January 9, 2018, and January 9, 2018, respectively.

44. Of the one hundred and sixty-seven (167) Class Notices mailed to former employees, my office received eighty (80) Claim Information Forms from Plaintiffs and Settlement Class members seeking to participate in the settlement. My office received no objections to the Settlement Agreement. We received six (6) mailings returned by the U.S. Postal Service as undeliverable and with no forwarding address that could not be re-mailed, and two envelopes with blank forms enclosed and no names on the forms or envelope. Any other mailings that were returned as undeliverable, but which forwarding addresses were shown, were

immediately re-mailed to the forwarding address, and none of those mailings were returned. We received one (1) request to opt-out of the Settlement Agreement, with the opt-out former employee stating that due to her good past relationship with the employer, she did not wish to participate.

45. Attached hereto as Exhibit 7 is the proposed Order of Final Approval.

## BACKGROUND AND EXPERIENCE OF CLASS COUNSEL[2]

46. BA is a law firm in New York City that focuses on representing plaintiffs with a wide variety of employment claims. I, along with my firms, have been involved in the representation of employees and former employees in claims including individual and class-wide violations of wage and hour laws, discrimination and harassment based on sex, race, disability or age, as well as retaliation, and employment contract claims. I have also represented plaintiffs in cases brought under 42 U.S.C. §1981 et seq.

47. I am a 1982 graduate of Brooklyn Law School and, since at least 1993, have practiced employment law in the New York federal and state courts. In addition to being admitted to practice in the state of New York, I am admitted in the United States Courts for the Southern and Eastern Districts of New York and in the Second Circuit Court of Appeals. I am a long-time member of the National Employment Lawyers Association ("NELA") and the New York Chapter of NELA where I have lectured on employment litigation issues.

48. I have litigated extensively in federal and state courts in employment, civil rights and other matters for more than thirty-five years.

---

[2] A statement of Class Counsel's background and experience is also set forth in support the Motion for Attorney's Fees. Dkt. 65.

49. I was previously a partner in Beranbaum Menken Ben-Asher & Bierman LLP which was also extensively engaged in prosecuting civil rights, wage and hour and prevailing wage class action cases. I was also previously a partner in Bierman & Palitz LLP where I was also involved in prosecuting civil rights, wage and hour and other employment related cases.

50. I along with my firms, have successfully litigated wage and hour multiple plaintiff cases, and other class action and civil rights cases.

### FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

51. I have assessed the risks and inherent delays if Plaintiff were to continue with this litigation. Based on my experience as briefly set forth above, I believe that it is reasonable to expect that the case could take two years to litigate through to a final lower court judgment and an appeal, at a cost in the range of at least a hundred thousand dollars in legal fees and costs.

52. It is my opinion, based on the experience I briefly detailed above and for the reasons set forth in the memorandum of law submitted in support of the motion, that the proposed settlement is fair, reasonable and adequate. This opinion is based upon a complete assessment of the strengths and weaknesses of the case, which is founded on extensive discovery, investigative factfinding and legal research.

53. I declare under penalty of perjury under the laws of New York and the United States that the foregoing is true and accurate.

Executed this 23 day of March, 2018 at New York, New York.

_____
Mark H. Bierman