UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
RASHEENA WESLEY, SYREETA WESLEY, :
ANKLAV DWYER, JERMAINE CHADWICK, :
AMRA ROBINSON, ANGEL RAMIREZ, :
JEANNE WILLIAMS, ELLANCY JACQUES, :
and RONALD TATE, Individually and on Behalf :
of Other Similarly Situated Former Employees :
Employed by the Defendants :
                               *Plaintiffs*, :
:
                      -against- :    17-cv-376 (PAC)
:
THE CATALYST GROUP, INC., NATURAL :    **FINAL ORDER OF APPROVAL**
MARKETS FOOD GROUP, NATURAL :
MARKET RESTAURANT CORP., MRS. :
GREEN'S MANAGAMENT CORP., MRS. :
GREEN'S NATURAL MARKET, INC., PLANET :
ORGANIC HOLDING CORP., MRS. GREEN'S :
OF 585 HUDSON, INC., MRS. GREEN'S OF :
TARRYTOWN, INC., and MRS. GREEN'S OF :
RYE, INC., :
:
                               *Defendants*. :
-------------------------------------------------------------------- x

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiffs are former employees of three stores known as "Mrs. Green's Natural Market," alleged to be owned by Defendants. Plaintiffs initiated this putative class action by asserting claims under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. ("Federal WARN Act"), and the New York State Worker Adjustment and Retraining Notification Act, Article 25-A of the New York Labor Law ("N.Y. Lab. Law") § 860, et seq. ("NYS WARN Act") (collectively the "WARN Acts"). Plaintiffs allege that they were terminated as part of store closings and mass layoffs ordered by Defendants, without advance written notice of their terminations as required under the WARN Acts. Compl., Dkt. 1, ¶ 1.

Having reached a Settlement Agreement with Defendants, Plaintiffs move for an order granting: (1) final certification of the class and subclass; (2) final approval of the Settlement Agreement; (3) final approval of the Distribution Formula; and (4) final approval of class incentive awards to four of the named Plaintiffs. Notice of Mot., Dkt. 67 ("Approval Motion"). Plaintiffs also move for counsel to receive attorneys' fees in the amount of $133,333.33 and reimbursement of $4,861.95 in expenses. Notice of Mot., Dkt. 62 ("Fee Motion"); Pl.'s Mem. in Supp. Fee Mot., Dkt. 63, at 2. For the following reasons, the motions are GRANTED.

## BACKGROUND[1]

On behalf of themselves and others similarly situated, Plaintiffs filed their complaint on January 18, 2017, bringing claims under the WARN Acts. *See* Compl., Dkt. 1. Before filing their complaint, the named Plaintiffs executed a contingency retainer agreement with counsel, which provides for a contingency fee of 33 1/3% of any settlement or judgment, plus costs and disbursements. *See* Bierman Fee Decl., Dkt. 62, Ex. 1. In their Answers, Defendants denied Plaintiffs' allegations and asserted various affirmative defenses. *See* Dkts. 35 (non-Catalyst Defendants' Answer), 37 (Catalyst's Answer).

The parties engaged in discovery and had extensive settlement discussions. Bierman Approval Decl., Dkt. 68, ¶ 18. At a conference held before the Court on July 20, 2017, the Non-Catalyst Defendants represented to the Court that, due to their serious financial condition, a bankruptcy filing was imminent unless a settlement was expeditiously reached. *Id.* ¶ 19-20. Catalyst represented that, absent a settlement, it would move to dismiss all claims against it on the basis that Catalyst was an investor and not an "employer" within the meaning of the WARN Acts. *Id.* ¶ 21. After hearing from the parties, the Court appointed Magistrate Judge James L.

---

[1] This Order incorporates by reference the definitions in the Stipulation of Settlement Agreement, *see* Bierman Approval Decl. Ex. 1, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2

Cott to mediate the claims. *Id.* ¶ 24.

Thereafter, the parties and counsel continued to exchange additional information, discussed various settlement models, and engaged in several settlement meetings and discussions. *Id.* ¶ 29. On August 24, 2017, the parties attended an all-day mediation before Judge Cott. *Id.* ¶ 31. At the end of the mediation, Judge Cott recommended that the case be settled for $400,000. *Id.* ¶ 33. One week later, the parties agreed to settle the case for this amount, and they continued to extensively negotiate the terms for approximately three months. *Id.* ¶¶ 36-37. Thereafter, the parties executed a formal written Settlement Agreement. *Id.* Ex.1.

The Settlement Agreement provides that Defendants will pay a Settlement Amount of $400,000. *Id.* Ex. 1 ¶ 14. This amount would be allocated as follows: $10,000 to notice and administration costs; $133,333.33 to attorneys' fees; $4,862 to attorney expenses; $20,000 to incentive awards for four of the named Plaintiffs; and the balance of approximately $232,000 to compensating Settling Class Members. *See id.* Ex. 1 ¶¶ 15-18, 31-32. To receive a portion of this $232,000, Settling Class Members must return an Information Confirmation Form ("ICF") to Plaintiffs' counsel. *Id.* Ex. 1 ¶ 22. Each Settling Class Member's share will then be calculated according to a distribution schedule contained in the Settlement Agreement that accounts for: whether the member was employed full-time or part time, their rate of pay, and whether the employee accepted a severance payment. *Id.* Ex. 1 ¶ 18. Settling Class Members who accepted severance are treated as a separate subgroup for distribution purposes. *Id.* Class members have the opportunity to opt out of the Settlement Agreement and individually pursue claims against Defendants. Id. Ex. 1 ¶ 1aa, 26.

On December 12, 2017, the Court: preliminarily approved the Settlement Agreement; provisionally certified the class; directed distribution of the Class Notice; set January 23, 2018 as

the date by which class notice was to be completed; set February 28, 2018 as the deadline for Plaintiffs' counsel's motion for attorneys' fees; set March 9, 2018 as the deadline for any class members to file written objections or opt out of the settlement; and scheduled a fairness hearing for April 23, 2018. *See* Preliminary Order, Dkt. 59. Thereafter, Plaintiffs' counsel mailed notice to 167 former employees of the Defendants. Bierman Approval Decl. ¶ 44. Of those, 80 employees returned ICFs, one opted out, and none objected. *Id.* Having considered the employees' responses, the Approval Motion, the Fee Motion, the supporting declarations, and the arguments presented at the fairness hearing, the Court is prepared to rule.

## ANALYSIS

### I. NOTICE

Federal Rule of Civil Procedure 23 requires notice to the class "when a class action settlement has been proposed for court approval." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379-80 (S.D.N.Y. 2013). On January 5, 2018, Notice was sent by first-class mail to each class member at his or her last known address. Bierman Approval Decl. ¶ 43. The Summary Notice for publication was also published once in each of the publications identified in the Settlement Agreement and approved by the Court. *Id.* The Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members to opt out of the class, to object to the settlement, and to appear at the fairness hearing on April 23, 2018. The Court finds that the Notice and distribution of such Notice comported with Rule 23 and all constitutional requirements, including those of due process. *See in re Citigroup*, 965 F. Supp. 2d at 380. The Court also finds the $10,000 allocated to notice and administration costs to be reasonable. *See Acevedo v. Workfit* Med. LLC, 187 F. Supp. 3d 370, 383-84 (W.D.N.Y. 2016) (approving $27,500 in administration costs from $2.1 million settlement).

4

## II.     FINAL CLASS CERTIFICATION

The Court finally certifies the following class under Federal Rule of Civil Procedure 23 for settlement purposes:

> All persons, other than Opt-Outs, who were employed in any position who worked at or reported to the MG Hudson Facility, the MG Rye Facility, the MG Tarrytown Facility or any other "MRS. Green's Natural Market" location in the State of New York and whose employment was terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants in or about 2016 and who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5) and/or NY Lab. Law § 860-a.1.

The Court also certifies the following subclass of Class Members who signed a severance agreement:

> All persons, other than Opt-Outs, who were employed in any position who worked at or reported to the MG Hudson Facility, the MG Rye Facility, the MG Tarrytown Facility or any other "MRS. Green's Natural Market" location in the State of New York and whose employment was terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants in or about 2016 and who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5) and/or NY Lab. Law § 860-a.1 and who signed a severance agreement with one of the Defendants at the time of or after the termination of their employment by Defendants.

Persons automatically excluded from the Class include Defendants; Defendants' legal representatives, owners, officers and directors; members of Defendants' immediate families; and successors and assigns of any such excluded person.

Plaintiffs meet all the requirements for class certification under Rule 23(a). First, "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are approximately 167 class members, and "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d Cir. 1995). Second, "there are questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2). The proposed class members' claims all stem from the same source: the allegations that Defendants

failed to give them the required notice under the WARN Acts. As in other WARN Act cases, "virtually all the issues are common to the Class and the only differences are minor, namely, the rate of pay and the date of termination." *See Guippone v. BH S&B Holdings LLC*, No. 09-cv-1029, 2011 WL 1345041, at *5 (S.D.N.Y. 2011). Third, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named Plaintiffs' claims arise from the same course of conduct by Defendants—failure to provide the required notice—that also gives rise to the claims of the other class members based on the same legal theory. *See Guippone*, 2011 WL 1345041 at *6. Fourth, the named Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The named Plaintiffs "are free from conflicts of interest with the class they seek to represent," and are "represented by qualified counsel." *See Guippone*, 2011 WL 1345041, at *6 (quotations omitted); Bierman Approval Decl. ¶¶ 46-50.

Plaintiffs also satisfy Rule 23(b)(3)'s requirements that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As stated above, common questions of fact and law overwhelmingly predominate over the minor differences regarding individual claims. Moreover, a class action is superior to other methods because the small size of the individual claims makes individual litigation too costly to pursue, and there are few difficulties in managing this case as a class action. *See Guippone*, 2011 WL 1345041, at *7-8. Accordingly, final class certification is granted.

## III. FINAL SETTLEMENT APPROVAL

The Court hereby grants the Approval Motion and finally approves the settlement as set forth in the Settlement Agreement under Rule 23. Rule 23(e) requires that a court approve a class action settlement only upon "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A court makes this finding by examining both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85-86 (2d Cir. 2001).

To determine procedural fairness, courts examine the negotiating process leading up to the settlement. *See id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Here, the settlement is the product of "arms-length" negotiations rather than the result of collusion. *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983). Counsel engaged in settlement discussions over a ten-month period, worked through multiple versions of the proposed settlement, and received the assistance of a Magistrate Judge as an impartial mediator. Bierman Approval Decl. ¶¶ 18-37. Accordingly, the settlement is procedurally fair, reasonable, and adequate. *See Weinberger*, 698 F.2d at 74.

To determine substantive fairness, courts determine whether the settlement's terms are fair, reasonable, and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. Here, all of the factors weigh in favor of approving the settlement.

First, litigation through trial would be complex, expensive, and lengthy. *See In re Partsearch Tech., Inc.*, 453 B.R. 84, 99 (Bankr. S.D.N.Y. 2011) (finding complexity and expense in WARN Act case). Thus, the first factor weighs in favor of final approval.

Second, "the reaction of the class to the settlement" is favorable. Out of the 167 Class Members, none have objected to the settlement, only one has opted out, and 80 have opted to participate. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008). Thus, the second factor weighs in favor of final approval.

Third, sufficient discovery has been completed to allow Plaintiffs' counsel "an opportunity to consider the legal and factual merits of their claims and of the defenses asserted." *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95-cv-4954, 1999 WL 38179, at *3 (S.D.N.Y. 1999). Defendants produced voluminous payroll records and benefit documents, documents related to Defendants' financial status, severance agreements, benefit manuals, and copies of their filings with the New York State Department of Labor. Bierman Approval Decl. ¶ 16. Thus, the third factor weighs in favor of final approval.

Fourth, Plaintiffs face risks in establishing liability. This case presents multiple legal issues such as whether Catalyst is an "employer" within the meaning of the WARN Acts and whether Defendants' asserted defenses of faltering business and unforeseeable conditions preclude liability. The Class members would receive nothing if Defendants prevailed on their defenses. The Settlement Agreement eliminates this uncertainty, and class members will receive a substantial portion, if not all, of the wage compensation that they would have received had the action proceeded to a successful conclusion. Thus, the fourth factor weighs in favor of final approval.

Fifth, Plaintiffs face risks in establishing damages, as the "complexities of calculating damages increase geometrically" in class actions, and "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re PainWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 128-29 (S.D.N.Y. 1997). Indeed, the WARN Acts provide a detailed system for calculating damages, *see* 29 U.S.C. § 2104; N.Y. Lab. Law § 860(g), and Plaintiffs' counsel devoted extensive amounts of time to analyzing the payroll records of each class member simply to determine the most beneficial averages for calculating damages. Bierman Approval Decl. ¶ 26. Thus, the fifth factor weighs in favor of final approval.

Sixth, Plaintiffs face risks in maintaining the class action through trial. Defendants have stipulated to certification only for settlement purposes. Absent a settlement, Defendants are likely to oppose certification, which injects further risks, costs, and delays. As a result, it may be difficult to maintain the "motivation and resolve on the part of the named plaintiff[s] throughout a protracted and adversarial litigation." *Glover v. Crestwood Lake Section 1 Holding Corp.*, No. 89-cv-5386, 1991 WL 64172, at *6 (S.D.N.Y. April 10, 1991). Thus, the sixth factor weighs in favor of final approval.

Seventh, Defendants have repeatedly represented that they do not have the ability to withstand a greater judgment. In fact, they represented that they would file a petition for bankruptcy if the matter did not settle. Bierman Approval Decl. ¶ 31. Thus, the seventh factor weighs in favor of final approval.

Eighth, the settlement amount of $400,000 is well within the range of reasonableness in light of the best possible recovery that Plaintiffs could hope for. This amount will afford the participating class members much, if not all, of the damages that they could recover if they

9

succeeded at trial and Defendants could pay the judgment. Thus, the eighth factor weighs in favor of final approval.

Ninth, the settlement fund is also reasonable in light of all the attendant risks of litigation, such as the challenges and uncertainty of liability, the potential of losing witnesses, and the risks of collection. The Distribution Formula is also fair in that it is directly tied to each employee's actual average hours, hourly rate, and monetary value of non-wage compensation. When this monetary relief is weighed against the potential obstacles and cost of further litigation, the benefits of the settlement to the class are substantial. Thus, the ninth factor weighs in favor of final approval.

Accordingly, final settlement approval is granted. As per the terms of the Stipulation, the Settlement and any acts performed or documents executed in furtherance of it are not intended as, deemed to be, or construed as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants; and they shall not be admissible into evidence in any litigation in accordance with Federal Rule of Evidence 408. *Id.* Ex. 1 ¶ 38.

## IV.   INCENTIVE AWARDS FOR NAMED PLAINTIFFS

The Court finds reasonable the incentive awards of $5,000 each for named Plaintiffs Rasheena Wesley, Syreeta Wesley, Jeanne Williams, and Ronald Tate. These awards shall be paid from the Settlement Amount. Such incentive awards are common in class actions and are important to compensate plaintiffs for the time and effort expended in assisting the litigation, the risks incurred by becoming a litigant, and other burdens sustained by the plaintiff. *See Raniere v. Citigroup Inc.*, 310 FRD 211, 220 (S.D.N.Y. 2015) (citations omitted). Here, these named Plaintiffs devoted considerable amounts of their time to meeting with counsel and supplying counsel with information and documents. Bierman Approval Decl. ¶ 12. Moreover, these

awards are in line with awards in other cases. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 to each of four plaintiffs from $440,000 settlement); *deMuncas v. Bold Food, LLC*, No. 09-cv-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (approving $5,000 to each of four plaintiffs from $800,000 settlement). Accordingly, the request for incentive awards is granted.

## V.   ATTORNEYS' FEES AND EXPENSES

The Court hereby grants the Fee Motion. Plaintiffs' counsel request $133,333.33 in attorneys' fees, which is 33 1/3% of the Settlement Amount. "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method," but "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart Stores*, 396 F. 3d at 121 (citation omitted). Regardless of which method is used, courts analyze the six *Goldberger* factors to determine the reasonableness of the fee: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (citation and alteration omitted).

Here, using the percentage-of-the-fund method and analyzing the *Goldberger* factors, the court concludes that the requested fee is reasonable. First, a review of the firm's activity sheet demonstrates that counsel spent over 280 hours on this case, primarily in reviewing discovery, preparing motion papers, and engaging in settlement negotiations. Bierman Fee Decl. Exs. 2-3. When multiplied by a reasonable hourly fee for each attorney, these hours result in a fee of

$138,918.75, which is higher than the requested fee. *Id.* ¶¶ 50-51, 55, 57-58. Second, as explained above, the litigation was complex and required counsel to research issues such as what constitutes an "employer" under the WARN Acts in order to develop a viable theory of liability as to Catalyst. Third, as explained above, the litigation involved a substantial risk of any of Defendants' defenses succeeding; and if Plaintiffs failed to recover, counsel would be entitled to no fees, as they took this case on a contingency-fee basis. Fourth, Plaintiffs' counsel has substantial experience in litigating employment-related cases. *Id.* ¶¶ 42-51. Fifth, the requested fee represents one-third of the Settlement Amount, which is typical in class action settlements such as this one. *See Guippone v. BH S&B Holdings LLC*, No. 09-cv-1029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011) ("In class settlement funds like this [WARN Act settlement], a one-third award of the settlement proceeds is considered typical and reasonable."). Sixth, public policy considerations support the fee because "[f]air compensation for attorneys who take on such [WARN Act] litigation furthers the remedial purpose of such statutes." *Id.* at *12. Accordingly, the request for $133,333.33 in attorneys' fees is granted.

The Court also finds that counsel's request for reimbursement of $4,861.95 in litigation expenses is reasonable. Counsel is entitled to recover "reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Fab Universal Corp. Shareholder Derivative Litig.*, 148 F. Supp. 3d 277, 284-85 (S.D.N.Y. 2015) (citation omitted). The $4,861.95 represents the costs of filing fees, process server fees, delivery fees, and retrieving payroll and benefit data. Bierman Fee Decl. ¶ 60 and Ex. 4. These are necessary litigation expenses, reasonably incurred, and reasonably related to the interests of the class members. Accordingly, the request for $4,861.95 in litigation expenses is granted.

## **CONCLUSION**

For the reasons stated above, the Approval Motion and Fee Motion are granted. The Court retains continuing jurisdiction over (a) implementation of this settlement and any award or distribution of the Settlement Amount; (b) the disposition of the Settlement Fund; and (c) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation. In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, then this Order shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated.

Dated: New York, New York
April 23, 2018

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge